**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **REHAM T.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  **No. 24 C 10011** |
| | ) |
| **FRANK BISIGNANO, in his official** | )  **Judge Rebecca R. Pallmeyer** |
| **capacity as Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reham T. ("Plaintiff") suffers from a number of ailments, including lumbar spine degeneration, chronic headaches, vertigo, pulmonary fibrosis, depression, meningioma, and sciatica. She believes these conditions render her unable to engage in substantial meaningful work, thus entitling her to disability benefits under the Social Security Act. She filed an application for benefits with the Social Security Administration, but an administrative law judge ("ALJ") denied her application, and the Commissioner adopted that decision. Plaintiff appeals the Commissioner's decision to federal court pursuant to 42 U.S.C. § 405(g). As explained below, the Commissioner's decision was supported by substantial evidence, and is thus affirmed.

**BACKGROUND**

**I.    Plaintiff's Disability Application**

The Social Security Administration ("SSA") pays benefits to individuals who are unable to work due to disability. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[1]    In accordance with this district's Internal Operating Procedure 22, the court refers to Plaintiff only by her first name and the first initial of her last name.

In order to qualify for benefits, an individual must "furnish such medical and other evidence of a disability." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) (cleaned up).

On October 19, 2021, Plaintiff, then 42 years old, applied for Social Security disability benefits. (Administrative Record ("AR") [7-1] at 80.) In her initial application for benefits, she "alleged disability due to degeneration of lumbar spine, chronic headaches, vertigo, pulmonary fibrosis, depression, meningioma, and sciatica." (AR [7-1] at 29.) The SSA ALJ noted that the record contains complaints of other symptoms as well, including irritable bowel disease, overactive bladder disease, migraines, sleep apnea, heart palpitations, obesity, and anxiety. (*Id.* at 23–27.) Prior to 2020, she worked as a dialysis technician, but reduced her hours around February 2020 (evidently because of her ailments), and was laid off in May 2020. (AR [7-1] at 22, 219.)

She also reports having undergone surgical procedures in response to two medical conditions. First, in December 2019, she was diagnosed with "impingement syndrome" in her left shoulder. Following an MRI, in August 2020, she underwent a surgical procedure to address the condition. She claims that she still "experience[s] pain and reduced strength in her shoulders" following the operation. (Pl. Br. [11] at 3.) Second, in June 2021, X-rays showed that she had a minor spinal misalignment—specifically, "trace spondylolisthesis" and an instance of "spondylitic defect at L5-S1." (*Id.* at 2.) She speculates this was linked to an automobile accident roughly twenty years ago that caused "disc bulges in her lumbar spine" and persistent lower back pain. (*Id.*) An MRI taken in June 2022 also "revealed grade 1 spondylolisthesis and pars defects at L5-S1 with severe to moderate left foraminal stenosis." (*Id.*) She had lumbar spine surgery for this condition in August 2022, but claims persistent pain following this operation. (*Id.*)

Her application was initially denied by SSA on April 14, 2022; she then requested a hearing, which was held telephonically before Administrative Law Judge Joel Fina on September 5, 2023. (AR [7-1] at 20.)

When questioned in this hearing about her claimed inability to work, Plaintiff testified that she suffers from fatigue, trembling in the legs, back pain, and "nerve damage" in her legs that interferes with sitting. (*Id*. at 60.) She also complained of shortness of breath from pulmonary fibrosis caused by COVID-19, but acknowledges that the results of pulmonary function tests, including a CT scan of her lungs, were unremarkable. (*Id.* at 61.) She also claims that her disabilities have a severe impact on her day-to-day life. For example, she stated that she could not drive—the last time she tried, her "leg gave out," nearly causing an accident—and instead relies on family members to transport her from place to place. (*Id.*) She said she is able to shop for food, but struggles to "walk a long distance," so often opts for delivery. (*Id.* at 61–62.) At home, she claims that she struggles to cook meals because she "can't stand . . . for too long" and "can't reach for things," and cannot get out of bed without help. (*Id.* at 62–63.) She is not involved in crafts or hobbies, does not read, and is not involved in any church or community groups. (*Id.* at 64–68.) She testified that she watches television, but rarely pays attention to it, and instead has it on for background noise. (*Id.* at 70.)

Plaintiff also claims to suffer from neurological and mental disabilities. She claims that she struggles to pay attention, has difficulty with reading comprehension, and has panic attacks due to stress. (*Id.* at 71–73.) When asked if she could perform a "simple, repetitive task job at the sedentary level," she reported that she was unable due to her back and leg pain, and that due to her limitations, she would get "[o]verwhelmed by anxiety" because of "the stress level of people coming at me at one time [and] they're asking of me to do stuff like at one time." (*Id.* at 72–73.)

## II.   ALJ's Findings

Ultimately, the ALJ questioned the full veracity of Plaintiff's account. In an October 23, 2023 order, he denied Plaintiff's request for disability benefits, concluding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (*Id.* at 30.) He explained:

3

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . with the following limitations:

- The claimant can lift and/or carry ten pounds occasionally and less than ten pounds frequently.

- She can stand or walk for up to two hours per eight-hour workday and sit for at least six hours per eight-hour workday, with normal breaks.

- The claimant is limited to only occasional operation of foot controls. She can never crawl or climb ladders, ropes, or scaffolds.

- She can occasionally climb ramps or stairs, balance, stoop, crouch, and kneel.

- The claimant can frequently reach in all directions bilaterally, except she can only occasionally reach overhead.

- She can frequently handle objects (gross manipulation) and finger (fine manipulations).

- The claimant must avoid concentrated exposure to extreme cold and heat.

- She must avoid concentrated exposure to extreme wetness or humidity.

- She must avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts, and gases.

- She must avoid concentrated exposure to dangerous moving machinery and must avoid all exposure to unprotected heights.

(AR[2] [7-1] at 28.) Relevant here, the ALJ considered—and rejected in part—the opinions of two physicians: Dr. Salman Shiekh (Plaintiff's pulmonologist) and Dr. Jennifer Kurka (Plaintiff's primary care physician). The court briefly explains each doctor's recommendation, and the ALJ's relevant findings, in the sections below.

### A. Dr. Sheikh's Opinion

Dr. Sheikh evaluated Plaintiff's "shortness of breath of unclear etiology" and completed a "Pulmonary Residual Functional Capacity Questionnaire." He noted seven total limitations, including:

---

[2] The original quotation is formatted as a paragraph, and does not include bullet points. The court added them here for the benefit of the reader.

> [1] that [Plaintiff's] pain or other symptoms would occasionally interfere with her ability to maintain the attention and concentration needed to perform even simple work tasks, [2] that she was capable of moderate stress jobs, [3] that she could stand/walk for about 2 hours and sit for at least 6 hours in an 8-hour workday, [4] that she would need unscheduled breaks for a few minutes depending on her symptoms of shortness of breath, [5] that she could rarely lift/carry 20 pounds and occasionally lift 10 pounds, [6] that she had multiple environmental limitations, and [7] that she would be absent from work about one day per month due to impairments or treatment.

(AR [7-1] at 38.)

The ALJ found Dr. Sheikh's opinions to be of "some persuasive value." (*Id.*) He agreed with Dr. Sheikh that Plaintiff is limited to sedentary work due to her shortness of breath. (*Id.*) The ALJ parted ways with Dr. Sheikh on the requirement of frequent breaks, noting that Plaintiff's tests were normal, she had no signs of acute respiratory distress during her appointment, was described as "healthy looking" even by Dr. Sheikh, and was able to have a normal conversation. (*Id.* at 39.) The ALJ also noted that he had "considered [Dr. Sheikh's] assessment in the environmental limitations that the claimant should avoid concentrated exposure to respiratory irritants." (*Id.*) This sentence is somewhat confusing; it is not entirely clear whether the ALJ's reference to "concentrated" exposure is intended to be a summary of Dr. Sheikh's opinion—potentially inaccurate, in that Dr. Sheikh recommended that Plaintiff avoid *all* exposure to airborne irritants—or if the ALJ was instead rejecting Dr. Sheikh's finding and substituting his own finding with respect to concentrated irritants.

### B. Dr. Kurka's Opinion

Dr. Kurka, the Plaintiff's primary care physician, also completed a Residual Functional Capacity Questionnaire. (*Id.* at 37.) Dr. Kurka listed the following diagnoses: "pulmonary fibrosis, depression, anxiety, and chronic headaches." (*Id.* at 38.) Dr. Kurka believes that Plaintiff had "multiple significant limitations"; she (1) suffered from serious pain that would interfere with "even simple work tasks," (2) was unable to sit for more than 2 hours in an 8-hour workday, (3) required an unscheduled break every 15 minutes, (4) would require a cane when standing or walking, and (5) could "rarely lift and carry less than 10 pounds." (*Id.* at 37–38.)

5

The ALJ did "not find Dr. Kurka's opinion persuasive." (*Id.* at 38.) He noted that many of Dr. Kurka's proposed limitations—such as the limitations on sitting, standing, and walking, as well as the need for breaks every 15 minutes—are found nowhere else in the record. (*Id.*) For example, he noted, "there is no indication that [Plaintiff] lies prone all [day] or needs placement in a skilled nursing facility or home health care," notwithstanding Dr. Kurka's claims that Plaintiff can only sit or stand for very limited periods. (*Id.*) He also found Dr. Kurka's assertion that Plaintiff needs a cane inconsistent with other evidence in the record that she can walk without assistance. (*Id.*) Finally, the ALJ noted that "Dr. Kurka appears to have relied heavily on [Plaintiff's] self-report in her assessment of limitations," but that the evidence shows Plaintiff "retains the mental capacity to concentrate, persist, or maintain pace to attend appointments alone, to handle funds, to live on her own, to maintain her licensing as a dialysis technician, and to take some online courses." (*Id.*)

## III. Procedural History

Following ALJ Fina's written order, SSA's Appeals Council denied review, making the ALJ decision the Commissioner's final decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Pursuant to 42 U.S.C. § 405(g), Plaintiff then appealed the Commissioner's decision to this court, and the Commissioner moved for summary judgment. The motion is now fully briefed and ready for the court's attention.

## DISCUSSION

## I. Legal Standard

The court's review of the ALJ's factual findings is highly deferential—so long as the ALJ's decision is supported by "substantial evidence," it must be affirmed. *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (per curiam) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). The court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment" for that of the agency. *Burmester v.*

6

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (alteration omitted) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

The court does not, however, merely "rubber-stamp" the agency's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court must determine whether the agency has followed an "accurate and logical bridge" between the evidence and the conclusion. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). This bridge enables the court to "assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "While the ALJ need not evaluate every piece of testimony and evidence submitted, he must sufficiently articulate his assessment of the evidence to assure this court that he considered the important evidence and to enable this court to trace the path of his reasoning." *Palmer v. Barnhart*, 40 F. App'x 278, 284 (7th Cir. 2002) (citing *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)). Without a logical bridge, the court may not uphold the ALJ's decision, even if there is other evidence in the record to otherwise sustain the result. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Jeske*, 955 F.3d at 587 ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943))).

## II.     Analysis

Plaintiff contends that the ALJ's decision is deficient in three ways. First, Plaintiff argues that the ALJ mischaracterized the medical opinion of Dr. Sheikh, Plaintiff's pulmonologist, when he determined that Plaintiff need only avoid *concentrated* exposure to various elements, rather than *all* exposure. Second, Plaintiff argues that the ALJ did not evaluate the record fairly when he determined that Plaintiff could frequently reach in all directions bilaterally, occasionally reach overhead, and frequently handle and finger items. And third, Plaintiff argues that the ALJ's evaluation of Plaintiff's symptoms lacked explanation or support. The court will address each of these arguments in turn.

### A.    ALJ's Treatment of Dr. Sheikh's Opinion

The agency's regulations govern how ALJs evaluate medical opinions.   The revised regulations, issued in 2017, apply to this case.[3]   20 C.F.R. § 404.1520c.  Failure to comply with these revised regulations is reversible error, subject to harmless error review.  *See Stevens v. Kijakazi*, No. 21 C 270, 2022 WL 1000598, at *7 (E.D. Wis. Apr. 4, 2022).  An error is harmless if the record permits the court to "predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Under the applicable regulations, the ALJ must articulate how persuasive she finds all medical opinions in the case, considering the following factors: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors."   20 C.F.R. §§ 404.1520c(b)(2), (c)(1)–(5).   Generally, however, an ALJ is required to explain in detail her assessment of just two most important factors: supportability and consistency.   *Id.* § 404.1520c(b)(2).   "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," whereas "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2)).   "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Rosado v. Comm'r of Soc. Sec.*, No. 20 C 2003, 2022 WL 1421371, at *3 (M.D. Fla. May 5, 2022).  The ALJ must articulate how she considered the remaining regulatory factors—

---

[3]    The agency's revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Plaintiff filed her application for disability benefits on October 19, 2021.  (AR [7-1] at 80.)  The revised regulations removed the old "treating physician rule," which generally required ALJs to give a treating physician's opinion "controlling weight." *See, e.g.*, *Olivas v. Saul*, 799 F. App'x 389, 391 & n.1 (7th Cir. 2019); *see also* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . .").

"relationship with the claimant," "specialization," and "other factors"—if she finds two or more medical opinions to be "[e]qually persuasive." 20 C.F.R. § 404.1520c(b)(3).

In this case, the ALJ found Dr. Sheikh's opinion to be of "some persuasive value," but noted a lack of supportability and consistency. (AR [7-1] at 38.) The ALJ thus adopted Dr. Sheikh's finding that Plaintiff is "limited to sedentary work as greater activity could aggravate her shortness of breath complaints" (*id.* at 39), but not certain other portions of Sheikh's opinion. Most notably, the ALJ did "not find Dr. Sheikh's opinion persuasive to suggest that the claimant would be off-task and/or absent or require breaks beyond employer tolerances," because Dr. Sheikh also (1) noted that Plaintiff's pulmonary condition was "mild, with a chest CT and normal cardiac tests and the [Plaintiff's Pulmonary Function Test] showing mild restriction," and (2) observed that Plaintiff was "sitting comfortably [during her appointment with Dr. Sheikh] . . . without any signs of being in acute respiratory distress and able to ha[ve a] normal conversation." (*Id.*) These findings undermined support for Dr. Sheik's ultimate conclusion. The ALJ also found that Dr. Sheikh's opinion about Plaintiff's need for unscheduled breaks was inconsistent with other evidence in Plaintiff's medical record, including a 2021 CT scan which "showed complete resolution of the pulmonary fibrotic scarring" and a pulmonary work-up that was "largely unremarkable." (*Id.* at 35.)

Plaintiff takes issue with the fact that the ALJ did not *explicitly* reject Dr. Sheikh's findings regarding Plaintiff's environmental limitations. She argues further that the ALJ mischaracterized Sheikh's opinion when he outlined that Plaintiff "should avoid *concentrated* exposure to respiratory irritants such as fumes, odors, dusts, and gases," as well as "*concentrated* exposure to extreme cold and heat," (*id.* at 39 (emphasis added)), because Dr. Sheikh's opinion actually stated that Plaintiff should avoid *all* exposure to these elements. But the court does not read this section of the ALJ's opinion as summarizing Dr. Sheikh's medical findings. Instead, the ALJ's analysis implicitly rejects Dr. Sheik's opinion regarding environmental limitations to the extent it appears to require that she avoid *all* contaminants. Thus, the ALJ concludes, consistent with

9

other evidence concerning Plaintiff's pulmonary condition, that she must avoid *concentrated* contaminants. That the ALJ does not say so explicitly does not trouble the court at this stage because ALJs "are subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ's finding that Plaintiff should avoid only concentrated exposure to these environmental elements is supported by substantial evidence, as the ALJ considered the Plaintiff's "unremarkable" pulmonary testing, both within Dr. Sheikh's assessment and throughout Plaintiff's medical history, including in a 2023 spirometry where Plaintiff's provider noted her results were normal and showed only mildly reduced DLCO.[4] (AR [7-1] at 35.) *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (finding that the threshold for substantial evidence is "not high"). "As a reviewing court, we must affirm the ALJ's decision if it is adequately supported, regardless of whether 'reasonable minds could differ.'" *Thorpe v. Bisignano*, 148 F.4th 432, 437 (7th Cir. 2025) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**B.      ALJ's Finding That Plaintiff Could Frequently Reach, Handle, and Finger**

Next, Plaintiff argues that the ALJ did not evaluate the record fairly when he determined that Plaintiff could frequently reach in all directions bilaterally, occasionally reach overhead, and frequently handle and finger items. Plaintiff specifically argues that the ALJ erred by giving less than controlling wait to two types of evidence: Plaintiff's self-reported pain and inability to perform her activities of daily living, and medical records demonstrating she continued to have pain and difficulty reaching after her August 2020 shoulder surgery. But in reviewing the ALJ's determinations, this court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial

---

[4] DLCO is a type of pulmonary function test that "measures how much carbon monoxide passes from your lungs to your blood, or the 'diffusing capacity for carbon monoxide.' " *Lung Diffusion Testing (DLCO)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diagnostics/15445-dlco (last visited Mar. 31, 2026).

evidence supports it." *Rabdeau v. Bisignano*, 155 F.4th 908, 912 (7th Cir. 2025) (quoting *Gedatus,* 994 F.3d at 900). An ALJ "is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). The ALJ here did not ignore an entire line of evidence.

Plaintiff observes that the ALJ did not reference her medical records showing that after her August 2020 surgery, doctors assessed Plaintiff's shoulder strength to be a 4 out of 5. Specifically, she points to medical records from August to October 2022 that note her shoulder strength was reduced, records that reflect shoulder strength assessed at 4/5. (Pl.'s Mot. [11] at 10–11 (citing AR [7-2] at 78, 90, 97, 113, 123, 131, 139, 147).) In reviewing Plaintiff's medical records as a whole, the ALJ determined that Plaintiff's shoulder was improving after her August 2020 surgery, based in part on an assessment done in January of 2022 which found that Plaintiff's range of motion in both shoulders was overwhelmingly "[n]ormal." (AR [7-1] at 35 ("Still, the record shows that the claimant's left shoulder improved thereafter, including in range of motion, 5/5 strength, and improved impingement signs, and there were also similar findings on the right shoulder." (citing AR [7-1] at 840).) *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) (affirming ALJ's decision where the "evidentiary record d[id] not uniformly support [Plaintiff's] assertions," because some medical records "indicate[d] that her symptoms were abating toward the end of her claimed disability period").

Indeed, the ALJ's assessment that Plaintiff's shoulder function was improving is consistent with the medical records that Plaintiff points to: in 2020, after her surgery, Plaintiff's shoulder strength was assessed as 4 out of 5 (suggesting, in the court's view, that the surgery was successful), and by early 2022, her strength had improved to 5 out of 5. True, in the late summer of 2022, her shoulder strength was reduced to 4 out of 5, but these findings do not appear to be significantly inconsistent. And even if there were tension between the medical records the ALJ cited to and the records Plaintiffs fault him for failing to consider, "'[w]here conflicting evidence

11

allows reasonable minds to differ as to whether a claimant is entitled to benefits,' the court must defer to the Commissioner's resolution of that conflict." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (quoting *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997)).

As for Plaintiff's own reports of pain and lack of function in her shoulders, the ALJ *did* explicitly consider this evidence when making his determination. He accounted for this evidence on multiple occasions throughout his report, qualifying that—despite the state agency's assessment that there were no mobility limitations in her shoulder, and the signs of improvement in her medical records—his residual function capacity would nonetheless limit her to "occasional" reaching overhead. He reached that conclusion in light of "the claimant's shoulder complaints and surgery, as well as her upper extremity complaints which could be aggravated by greater use." (AR [7-1] at 35, 37.) Based on the ALJ's explicit reference to Plaintiff's self-reported pain, Plaintiff cannot demonstrate that the ALJ "ignore[d] [this] line of evidence supporting a finding of disability," which she must do in order to be entitled to remand. *Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025) (citation and internal quotation marks omitted). The ALJ's consideration of Plaintiff's shoulder and hand function is affirmed.

### C.     ALJ's Treatment of Plaintiff's Symptoms

Lastly, Plaintiff takes issue with the ALJ's assessment that the symptoms Plaintiff described were not as limiting as she alleged they were. "If the standard of review for an ALJ's overall decision—the 'substantial evidence' standard—is deferential, the standard of review for an ALJ's assessment of a plaintiff's allegations is even more deferential." *Ricky L. v. O'Malley*, No. 23 C 6006, 2024 WL 3848552, at *12 (N.D. Ill. Aug. 16, 2024) (quoting *Hohman v. Kijakazi,* 72 F.4th 248, 251 (7th Cir. 2023)). Indeed, the ALJ's credibility determination is afforded "special deference." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citation and internal quotation marks omitted). A court may overturn an ALJ's evaluation of a plaintiff's subjective symptoms only if the plaintiff can show it is "patently wrong, which means that the decision lacks

any explanation or support." *Hess*, 92 F.4th at 679 (citation omitted); *see also Tutwiler*, 87 F.4th at 859.

That test is not met here. The ALJ explained that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "inconsistent because the evidence generally does not support the alleged loss of function." (AR [7-1] at 35.) In the subsequent paragraph, he identified multiple inconsistencies between Plaintiff's allegations and the medical record: improvement of Plaintiff's hand and shoulder function, despite Plaintiff's complaints of limited mobility; normal CT scans showing full healing of her pulmonary fibrotic scarring, despite Plaintiff's complaints of persistent shortness of breath; extensive medical records stating that Plaintiff "generally exhibited a normal gait," despite her allegations of "significant problems with her ability to stand and walk." (*Id.*) Moreover, he credits the findings of the state agency, which concluded that some of Plaintiff's allegations "appear extreme and beyond what objective evidence supports." (AR [7-1] at 83.)

The court finds the ALJ's determination that Plaintiff's description of her symptoms was not credible is supported by substantial evidence, and is certainly not "patently wrong." The ALJ's opinion is affirmed.

## CONCLUSION

The Administrative Law Judge's decision is affirmed. The Commissioner's motion for summary judgment [15] is granted, and Plaintiff's motion for reversal [11] is denied. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

ENTER:

Dated: March 31, 2026

_____

REBECCA R. PALLMEYER
United States District Judge

13